UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEVEN PERRY, JR.,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>C/O BOONE-SHARP,<br><br>　　　　　　　Defendant. | Case No. 3:22-cv-00196-CLB[1]<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 32] |

This case involves a civil rights action filed by Plaintiff Steven Perry, Jr. ("Perry") against Defendant Debra Boone-Sharp ("Boone-Sharp"). Currently pending before the Court is Boone-Sharp's motion for summary judgment. (ECF Nos. 32, 34.)[2] On April 20, 2023, the Court gave Perry notice of Boone-Sharp's motion pursuant to the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). (ECF No. 36.) Despite the Court *sua sponte* granting an extension of time, (ECF No. 39), Perry has failed to file an opposition to the motion. For the reasons stated below, the Court grants Boone-Sharp's motion for summary judgment, (ECF No. 32).

I.  **BACKGROUND**

　　A.  **Procedural History**

Perry is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Ely State Prison ("ESP"). (ECF No. 4.) On May 2, 2022, proceeding *pro se*, Perry filed an inmate civil rights complaint pursuant to 42

---

[1]　The parties have voluntarily consented to have this case referred to the undersigned to conduct all proceedings and entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 29.)

[2]　ECF No. 34 consists of Perry's medical records filed under seal.

U.S.C. § 1983, ("Complaint"). (ECF No. 1-1.) Perry's Complaint alleges the following: On September 26, 2020, Boone-Sharp called three members of the CERT team to persuade him to close his food flap. (ECF No. 4 at 4.) Although Perry had "captur[ed]" the food flap by placing his arm through it, he did not pose a threat of physical harm because his arm was "fully encased" within the red box surrounding the flap. (*Id.* at 4, 6.) Nevertheless, as Perry was seeking a "verbal resolution" with the CERT team, Boone-Sharp snuck up to the cell door and, with a "winding up motion," slammed the red box's metal slide onto Perry's hand. (*Id.* at 5, 8.) The slide "cut[ ] into" the hand, causing bleeding and lacerations. (*Id.* at 5.) Perry later received "antibiotic ointment and medications for pain and swelling." (*Id.*)

The Complaint also alleges that Perry engaged in protected activity on September 20, 2020, by filing an emergency grievance about Boone-Sharp's "sexual comments." (*Id.* at 3, 10.) Four days later, Boone-Sharp allegedly called Perry a "snitch" in front of other inmates on the tier. (*Id.* at 4, 10.) Perry also alleges that, six days after he filed the emergency grievance (and two days after he filed a second emergency grievance against Boone-Sharp), Boone-Sharp slammed a metal slide onto his hand, which is the incident referenced to in the excessive force claim. (*Id.* at 4.)

The Complaint was screened in accordance with 28 U.S.C. § 1915A(a). (ECF No. 3.) Based on the above allegations, the Court allowed Perry to proceed on an excessive force claim and a retaliation claim against Defendant Boone-Sharp. (*Id.*)

On August 9, 2023, Boone-Sharp filed the instant motion for summary judgment arguing (1) Perry failed to exhaust his administrative remedies as to the retaliation claim; (2) Perry cannot establish the elements of his retaliation claim; and (3) Boone-Sharp did not use excessive force. (ECF No. 32.) Perry did not oppose.

**B.**     **Undisputed Facts re: Summary Judgment**

The following undisputed facts as presented by Defendant are as follows: According to an investigation detail report, on September 26, 2020, at approximately 9:45 a.m., Officer Boone-Sharp was working her assigned post in the infirmary. (ECF No. 32-3

at 3.) Perry had a Red Box security restraint attached to the food slot on his cell door. (*Id.*) ESP has a security restraint policy that is followed when it is necessary to restrain an inmate—Operation Procedure ("OP") 407. (ECF No. 32-2.) Pursuant to OP 407, attaching a Red Box security restraint to the food slot on a cell door is part of this policy. (*Id.* at 8-9.) A Red Box's purpose is to assist and protect correctional officers when serving food to an inmate through the food slot or when delivering an item to an inmate. (*Id.*)

During the incident in question, Perry's Red Box was captured from breakfast time because Perry was upset that Boone-Sharp had given him a diet loaf at breakfast. (ECF No. 32-3 at 3.) Correctional Officers Guzman, Ariziga, and Brown were talking to Perry and Boone-Sharp approached Perry's cell and noticed the Red Box was still open. (*Id.*) OP 407 required the Red Box security restraint to be closed unless something was being delivered to him. (ECF No. 32-2 at 8-9.) Boone-Sharp attempted to close the slide, but Perry put his hand in the Red Box and forced the slide back at Boone-Sharp. (ECF No. 32-3 at 3.) This caused Boone-Sharp's wrist to "jar" and her elbow to slam back into the handle of the next cell. (*Id.*)

Following the incident, Officer Jose Guzman Jr., took photographs of Perry's right hand. (ECF No. 32-4.) Later that afternoon, medical staff saw Perry and he told medical staff that he cut his hand on the food slot. (ECF No. 34-3 at 2 (sealed).) Perry stated that it was "not painful," but that he had some "mild swelling." (*Id.*) Medical staff noted a superficial cut on the top of Perry's right hand but noted no active bleeding and no sign of infection. (*Id.*) For treatment, Perry received antibiotic ointment and ibuprofen. (*Id.*) In November 2020, Perry spoke again with medical staff about his right hand. Medical staff noted that Perry was able to make a fist with his right hand, and that there was no visible swelling, and Perry was provided ibuprofen. (ECF No. 34-4 (sealed).) On October 13, 2021, medical staff again saw Perry for right hand, but Perry refused to have x-rays taken. (ECF No. 34-5 (sealed).)

In support of the motion for summary judgment, Boone-Sharp submitted an affidavit, which stated that she would not have attempted to close the Red Box if she knew

Perry's hand would stop the Red Box from closing. (ECF No. 32-12 at 3.) Boone-Sharp stated she did not intend to cause Perry any harm when she attempted to close the Red Box and she did not see Perry's hand when she attempted to close the Red Box security restraint attached to the food slot on Perry's cell. (*Id.*) Boone-Sharp was only attempting to comply with the requirements of OP 407. (*Id.*) Boone-Sharp viewed this event as an accident and did not intend to harm Perry, and she is "sorry that it happened." (*Id.*)

According to Perry's Inmate Disciplinary History Report, Perry has a long disciplinary history, including several charges related to "propelling" based on throwing substances from his cell. These incidents occurred on at least the following dates: March 9, 2010, January 11, 2020, February 9, 2020, July 8, 2020, and July 11, 2020. (ECF No. 32-7.) Perry also "captured" his food slot on several occasions resulting in disciplinary charges on at least the following dates: February 22, 2008, April 29, 2009, January 11, 2020, February 19, 2020, March 15, 2020, May 16, 2020, July 8, 2020, July 11, 2020, September 10, 2020, September 15, 2020, and September 25, 2020. (*Id.*)

On September 20, 2020, Perry filed an emergency grievance, #2006-31-08365, against Officer Boone-Sharp. (ECF No. 32-5; 32-8 at 23.) Perry stated he had a PREA complaint against Boone-Sharp. (ECF No. 32-8 at 23.) The grievance was denied as not an emergency, and it does not appear Perry filed any further grievances related to this issue. (*Id.*)

On September 24, 2020, Perry filed an emergency grievance, #2006-31-08367, against Officer Boone-Sharp. (ECF No. 32-6; ECF No. 32-8 at 22.) The grievance was denied as not an emergency. (*Id.*) Perry then filed an informal grievance regarding the excessive force incident, #2006-31-08464. (ECF No. 32-8 at 21.) Perry stated Boone-Sharp deliberately slammed his right hand inside his Red Box. (*Id.*) The response at the First Level from Warden William Gittere stated in relevant part:

> A formal Use of Force Review was completed following your allegations related to that incident and submitted for my review before being forwarded to the Deputy Director of Operations and the Inspector General's Office for their final review.

> Based on my review of video related to the incident, reports submitted by participants and witness[es], and subsequent interviews of staff members and inmates who participated or witnessed the incident, no officer misconduct was identified. Per those reports, **you admitted to reaching in and pushing the inner slide door of the food slot isolation box back open when Officer Boone-Sharp attempted to close it while you were speaking to other officers**.
>
> The force that you used to push the slide back open actually caused Officer Boone-Sharp to hit her elbow against the opposite door. Your actions were the cause of any injuries that you sustained. When you informed officers that you had been allegedly injured, you were assessed and offered treatment by medical staff.
>
> My assessment of this incident was that it was not a use of force at all. An officer attempted to secure a door on a food slot isolation box when it was clear to do so. **You stuck your hand in the way and shoved the door open, allegedly causing minor injury to yourself.** You are lucky that the officer was not more seriously injured, and are advised to never do that again. Your remedies are noted and rejected.

(*Id.* at 22 (emphasis added).)

## II.     LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be

authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or

denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

///

///

## III. DISCUSSION

### A. Excessive Force

The Eighth Amendment's proscription on cruel and unusual punishment forbids prison officials from inflicting "the unnecessary and wanton infliction of pain . . .." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Encompassed within the Eighth Amendment is a bar on the use of excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992). Courts in the Ninth Circuit apply a five-part balancing test to excessive force claims: (1) the extent of the inmate's injuries; (2) the need for application of force; (3) the relationship between the need and amount of force; (4) the threat reasonably perceived by prison officials; and (5) any efforts that officials utilized to "'temper the severity of a forceful response.'" *Id*. at 7 (quoting *Whitley*, 475 U.S. at 321); *see also Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

The inmate must demonstrate that officials acted maliciously and sadistically to prevail. "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. As the Ninth Circuit has explained,

> [t]he "malicious and sadistic" standard arose out of "the need to maintain or restore discipline" inside the prison. When a prison disturbance occurs, prison officials must make "decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" In these situations, prison officials are "accorded wide-ranging deference" and therefore, prisoners alleging excessive force must show that the force was applied "maliciously and sadistically to cause harm."

*Wood v. Beauclair*, 692 F.3d 1041, 1049-50 (9th Cir. 2012) (quoting *Hudson*, 503 U.S. at 6 and *Whitley*, 475 U.S. at 320). Thus, the Court must be careful when reviewing the factors to verify indicia of "such wantonness with respect to the unjustified infliction of harm as [is] tantamount to a knowing willingness that it occur." *Hudson*, 503 U.S. at 9. Moreover, there is no need for a showing of serious injury as a result of the force, but the lack of such

injury is relevant to the inquiry. *See id.* at 7-9; *Martinez*, 323 F.3d at 1184; *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000).

The Court will first address the merits of Perry's excessive force claim. Excessive force cases "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," and for this reason, the Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Lolli v. Cnty. of Orange*, 351 F.3d 410, 415–16 (9th Cir. 2003); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (citing cases).

In the motion for summary judgment, Boone-Sharp contends that balancing the *Hudson* factors weighs in favor of Boone-Sharp being granted summary judgment on the excessive use of force claim. (ECF No. 32 at 11-15.) She contends that Perry's alleged injury was minimal even if caused by Boone-Sharp, the incident was nothing more than an accident, and as no force was directed at Perry. (*Id.*)

As discussed above, the undisputed facts, uncontradicted by Perry, are as follows. According to an investigation detail report, on September 26, 2020, at approximately 9:45 a.m., Officer Boone-Sharp was working her assigned post in the infirmary. (ECF No. 32-3 at 3.) Perry had a Red Box security restraint attached to the food slot on his cell door. (*Id.*) During the incident in question, Perry's Red Box was captured from breakfast time because Perry was upset that Boone-Sharp had given him a diet loaf at breakfast. (*Id.*) Correctional Officers Guzman, Ariziga, and Brown were talking to Perry and Boone-Sharp approached Perry's cell and noticed the Red Box was still open. (*Id.*) Boone-Sharp attempted to close the slide, but Perry put his hand in the Red Box and forced the slide back at Boone-Sharp. (*Id.*) This caused Boone-Sharp's wrist to "jar" and her elbow to slam back into the handle of the next cell. (*Id.*)

Following the incident, Officer Jose Guzman Jr., took photographs of Perry's right hand. (ECF No. 32-4.) Later that afternoon, medical staff saw Perry and he told medical staff that he cut his hand on the food slot. (ECF No. 34-3 at 2 (sealed).) Perry stated that

it was "not painful," but that he had some "mild swelling." (*Id.*) Medical staff noted a superficial cut on the top of Perry's right hand but noted no active bleeding and no sign of infection. (*Id.*) For treatment, Perry received antibiotic ointment and ibuprofen. (*Id.*) In November 2020, Perry spoke again with medical staff about his right hand. Medical staff noted that Perry was able to make a fist with his right hand, and that there was no visible swelling, and Perry was provided ibuprofen. (ECF No. 34-4 (sealed).) On October 13, 2021, medical staff again saw Perry for right hand, but Perry refused to have x-rays taken. (ECF No. 34-5 (sealed).)

In support of the motion for summary judgment, Boone-Sharp submitted an affidavit, which stated that she would not have attempted to close the Red Box if she knew Perry's hand would stop the Red Box from closing. (ECF No. 32-12 at 3.) Boone-Sharp stated she did not intend to cause Perry any harm when she attempted to close the Red Box and she did not see Perry's hand when she attempted to close the Red Box security restraint attached to the food slot on Perry's cell. (*Id.*) Boone-Sharp was only attempting to comply with the requirements of OP 407. (*Id.*) Boone-Sharp viewed this event as an accident and did not intend to harm Perry, and she is "sorry that it happened." (*Id.*)

The response to Perry's grievance related to the incident showed that no officer misconduct was identified, and Perry admitted to reaching in and pushing the inner slide door of the food slot isolation box back open when Boone-Sharp was attempting to close it. (ECF No. 32-8 at 22.)

Here, the Court finds that the majority of the evidence supports Boone-Sharp's assertion that the incident in question was merely an accident. Nonetheless, based on the undisputed evidence, all five *Hudson* factors still objectively weigh against finding an Eighth Amendment violation. *See Hudson*, 503 U.S. at 6-7. First, using force generally was necessary. Perry implicitly threatened Boone-Sharp when he stuck his hand out of his food slot, especially in light of Perry's long disciplinary history.

Second, the amount of force used was proportional to the need. Boone-Sharp used minimal force to close the Red Box and the evidence shows she did not knowingly or

intentionally close the door on Perry's hand. There is no evidence that Boone-Sharp used other, greater force to accomplish this. Thus, the force used was objectively minimal and proportional to the need to maintain security by closing the Red Box. Third, Perry's injuries were minimal, if not de minimis. Thus, both the force Boone-Sharp used and Perry's injuries were insignificant here.

Next, the threat Boone-Sharp reasonably perceived was significant. As discussed above, Perry had an extensive disciplinary history, which warranted the placement of the Red Box to begin with. Thus, when Perry failed to keep himself free of the food slot, a reasonable officer would have felt threatened. Finally, Perry seems to have acknowledged that he reached in and pushed the inner slide of his door open when Boone-Sharp was attempting to close it, resulting in him injuring himself.

Based on the evidence before the Court, all five of the relevant *Hudson* factors weigh in favor of finding that Boone-Sharp did not use excessive force. There is no dispute as to the minimal amount of force used, the circumstances under which it was applied, and the minimal injuries to Perry as a result of the minimal force. As such, there is no genuine issue of material fact as to the merits of the excessive force claim. Perry does not, and cannot, show that Boone-Sharp applied force maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. *See Hudson*, 503 U.S. at 6. To the contrary, Boone-Sharp applied a minimal amount of force necessary in a good-faith effort to maintain order, and it was not done maliciously or sadistically to cause harm. Accordingly, the Court recommends Boone-Sharp's motion for summary judgment be granted as to the excessive force claim.

**B.     Retaliation**

Next, the Court addresses the merits of Perry's retaliation claim. Perry's retaliation claim is premised upon allegations that Perry engaged in protected activity on September 20, 2020, by filing an emergency grievance about Boone-Sharp's "sexual comments." (ECF No. 4 at 3, 10.) Four days later, Boone-Sharp allegedly called Perry a "snitch" in front of other inmates on the tier. (*Id.* at 4, 10.) Perry also alleges that, six days after he

filed the emergency grievance (and two days after he filed a second emergency grievance against Boone-Sharp), Boone-Sharp slammed a metal slide onto his hand, which is the incident referenced to in the excessive force claim. (*Id.* at 4.)

It is well established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Within the prison context, a viable retaliation claim has five elements: (1) a state actor took some adverse action against the inmate, (2) because of, (3) the inmate's protected conduct, and that the action, (4) chilled the inmate's exercise of his First Amendment rights, and (5) did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567–68. The adverse action must be such that it "would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114 (quoting *Rhodes*, 408 F.3d at 568).

To prevail against Defendants' motion for summary judgment, Plaintiff must demonstrate a triable issue of material fact on each element of his retaliation claim. *Brodheim*, 584 F.3d at 1269 n.3. An inmate must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. *Pratt v. Rowland*, 65 F.3d 802, 806-07 (9th Cir. 1995). "[A] plaintiff must show that his protected conduct was 'the "substantial" or "motivating" factor behind the defendant's conduct.'" *Brodheim*, 584 F.3d at 1271 (quoting *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). The plaintiff "need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent.'" *Id.* (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)).

To raise a triable issue as to motive, plaintiff must offer "either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of that motive]." *McCollum v. Cal. Dep't of Corr. and Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (citation and quotation marks omitted). Circumstantial motive evidence may include: "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse ... action were false and pretextual." *Id.* (internal citation and quotation marks omitted). However, "mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 905 (9th Cir. 2014).

Boone-Sharp contends Perry cannot prevail on his retaliation claim as there is no evidence Boone-Sharp knew of the emergency grievances and because of this called him a snitch or closed his hand in the Red Box. (ECF No. 32.) The Court agrees. Based on the evidence in the record, there is no causal connection between the alleged retaliatory acts and the filing of grievances. Further, Perry's mere speculation that there is a causal connection is not enough to raise a genuine issue of material fact. *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). Because Perry did not file an opposition to the motion for summary judgment, he has not presented any evidence to the Court showing that his First Amendment activity was the substantial or motivating factor behind Boone-Sharp's actions, and, therefore, he has not carried his burden of demonstrating a genuine issue for trial. As no reasonable jury could conclude that the alleged retaliatory acts occurred because of the filing of grievances, Boone-Sharp is entitled to summary judgment.[3] *Matsushita,* 475 U.S. at 586.

///

///

---

[3] Because the Court has determined that the motion for summary judgment be granted on merits of this claim, it need not address Boone-Sharp's argument regarding exhaustion.

## IV. CONCLUSION

Consistent with the above, **IT IS ORDERED** that Boone-Sharp's motion for summary judgment, (ECF No. 32), be **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court **ENTER JUDGMENT** accordingly and **CLOSE** this case.

**DATED**: October 24, 2023.

_____
**UNITED STATES MAGISTRATE JUDGE**